## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK WILLIAMS, | : | CIVIL NO. 3:-07-CV-1283 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| LT. WARMERDORF, et al., | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Plaintiff Derrick Williams ("Plaintiff"), a federal inmate housed at the United States

Penitentiary at Allenwood ("USP-Allenwood"), White Deer, Pennsylvania, commenced this

Bivens[1] civil rights action on July 16, 2007, naming as Defendants Lieutenant Womeldorf,

Officer Holtzapple, Officer Hughes, Officer Wetzel, Officer Collier, Officer Kuchcinski,

Assistant Health Services Administrator DeWald and Physicians Assistant J. Holtzapple.[2]

(Doc. 1.)  Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and for summary judgment

pursuant to Federal Rule of Civil Procedure 56.  (Doc. 27.)  For the reasons set forth below,

Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) will be

---

[1] Bivens actions are the federal counterpart to 42 U.S.C. § 1983 claims brought against state officials. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (citing Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a Bivens claim against federal officials." Schrob v. Catterson, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Several of the Defendants' names are misspelled in the complaint. (Doc. 1.) According to documents submitted by Defendants, these are the proper spellings.

granted, the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), will be granted in part and denied in part, and the motion for summary judgment will be granted in part and denied in part.

I.   **Motion to Dismiss**

   **A. Allegations of the Complaint**

Plaintiff alleges that while housed in the Special Housing Unit ("SHU") at USP-Alenwood, on April 26, 2006, approximately 12:30 p.m. he was assaulted by his cell mate while in his cell. During the assault, Plaintiff and other inmates were banging on the cell doors and pushing the panic button "yelling that there was a problem." (Doc. 1, at 4.) Nearly a half hour later, Defendant Officer Holtzapple came to the door and Plaintiff showed him his bruised face and the blood in his mouth and requested to be removed from the cell. Defendant Officer Holtzapple told him that he was unable to remove him from the cell at that time because he was the only available officer and there was a staff meeting in progress. Plaintiff requested to see Defendant Lieutenant Womeldorf. However, Defendant Officer Holtzapple advised Plaintiff that Defendant Womeldorf was unavailable as he was also in the staff meeting. (Doc. 1, at 5.)

Plaintiff alleges that he remained in the cell for nearly an hour without assistance, and that during that time, his cell mate continued to assault him. He alleges that Defendant Officer Kuchcinski was made aware of the situation, but simply responded that "they know up front what's going on." According to Plaintiff he was not removed from the cell until the

Warden and Associate Warden issued an order for the officers assigned to the SHU to remove him.

As a result of the assault, he suffered a serious head injury, a bruised jaw and experienced emotional distress.  (Id.)  He alleges that it took the medical department nearly four months to realize that he was suffering from a serious head injury which causes him headaches, blurred vision and emotional distress.  (Id.)

**B.   Rule 12(b)(1)**

*1.   Standard of Review*

Federal courts are courts of limited jurisdiction and thus, are permitted to adjudicate cases and controversies only as allowed under Article III of the United States Constitution. Art. III, § 2.  A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of the court to address the merits of the plaintiff's suit. FED.R.CIV.P. 12(b)(1).  When considering a challenge to the court's jurisdiction pursuant to Rule 12(b)(1), no presumption of truthfulness attaches to the plaintiff's allegations, see Mortensen v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977), and the court may go beyond the four corners of the complaint and make factual findings which are decisive to the issue, relying on evidence such as affidavits, depositions and other testimony.  Employers Ins. of Wausau v. Crown Cork & Seal Co., 905 F.2d 42, 45 (3d Cir. 1990).  The plaintiff bears the burden of persuading the court that it has jurisdiction.  See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991); Kligman v. I.R.S.,

272 Fed.Appx. 166, 168 (3d Cir. 2008).

    *2.    Discussion*

    While a plaintiff may assert a <u>Bivens</u> claim against individual federal officials acting in their individual capacities, they may not sue to recover monetary damages against federal officials in their official capacities. An action against government officials in their official capacities constitutes an action against the United States; and <u>Bivens</u> claims against the United States are barred by sovereign immunity, absent an explicit waiver. <u>See</u> <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 483 (1994); <u>Jaffee v. U.S.</u>, 592 F.2d 712, 717 (3d Cir. 1979); <u>see also</u> <u>Lewal v. Ali</u>, No. 07-2865, 2008 WL 3286697, at *2 (3d Cir. Aug. 11, 2008). Therefore, plaintiff's claim for monetary damages against Defendants in their official capacities is barred.

    **C.    Rule 12(b)(6)**

    *1.    Standard of Review*

    Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts in the complaint, it "may also

4

consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007). Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Montville Twp. v. Woodmont Builders, LLC, 244 Fed. Appx. 514, 517 (3d Cir. 2007) (quoting Twombly, ___ U.S. at ___, 127 S. Ct. at 1969). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

2.    *Discussion*

Section 1983 of Title 42 of the United States Code offers private citizens a cause of

action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d

1199, 1204 (3d Cir. 1996). Bivens actions are the federal counterpart to § 1983 claims.

Egervary, 366 F.3d at 246 (citing Brown, 250 F.3d at 800). "[C]ourts have generally relied

upon the principles developed in the case law applying section 1983 to establish the outer

perimeters of a Bivens claim against federal officials."

Schrob, 948 F.2d at 1409.

Defendants argue that the complaint against Defendants Womeldorf, Collier, Hughes,

Wetzel, J. Holtzapple, and DeWald is subject to dismissal because Plaintiff fails to set forth

allegations that any of these Defendants acted in a manner that would violate his

constitutional rights. (Doc. 32, at 25.) "A defendant in a civil rights action must have

personal involvement in the alleged wrongs. . . . Personal involvement may be shown

through allegations of personal direction or actual knowledge and acquiescence." Rode v.

Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); See Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08.

Plaintiff alleges that Defendants Womeldorf, Collier, Hughes, and Wetzel failed to protect him. In order for plaintiff to prevail on his Eighth Amendment failure-to-protect claim under 42 U.S.C. § 1983, he must show that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As noted by Defendants, the only allegation against Womeldorf is that he was not present to resolve the situation. These allegations are insufficient to state a failure to protect claim. The motion will be granted as to Defendant Womeldorf.

With respect to Hughes, although Defendants state that he simply removed Plaintiff from the cell when ordered to do so, there are allegations in the complaint, and in the documents attached to the complaint, that preclude dismissal of this Defendant. Specifically, when Plaintiff made Defendant Kuchcinski aware of his situation, he responded that "they know up front what's going on." (Doc. 1, at 5.) According to Plaintiff, Hughes was among the officers "up front." (Doc. 1, at 10.) The Court concludes that these allegations are

7

sufficient to state a failure to protect claim. Defendants' motion to dismiss Defendant

Hughes for lack of personal involvement will be denied.

Likewise, he alleges that Defendant Wetzel, who is identified in Plaintiff's initial

administrative remedy informal resolution form (which is attached to the complaint) as "the

number one that day," and Defendant Collier, were also "up front" and were deliberately

indifferent to the urgency of the situation and to his safety. (Doc. 1, at 10-11.) The court

concludes that these allegations are sufficient to state a failure to protect claim. Defendants'

motion to dismiss Defendant Wetzel and Collier based on lack of personal involvement will

be denied.

The motion will also be denied with respect to Defendant J. Hotzapple, the physicians

assistant. To demonstrate a prima facie case of Eighth Amendment cruel and unusual

punishment based on the denial of medical care, as is alleged here, a plaintiff must establish

that defendants acted "with deliberate indifference to his or her serious medical needs."

Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir.

1993). There are two components to this standard:  First, a plaintiff must make an

"objective" showing that the deprivation was "sufficiently serious," or that the result of the

defendant's denial was sufficiently serious. Additionally, the plaintiff must make a

"subjective" showing that defendant acted with "a sufficiently culpable state of mind."

Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492,

499 (3d Cir. 2002). The "deliberate indifference to serious medical needs" standard is

obviously met when pain is intentionally inflicted on a prisoner, when the denial of

reasonable requests for medical treatment exposes the inmate to undue suffering or the threat

of tangible residual injury, or when, despite a clear need for medical care, there is an

intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.

2004) (quoting White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990)); Monmouth

County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

In his initial administrative remedy informal resolution form, he states that he was sent

to the medical department for treatment on the day of the incident. (Doc. 1, at 10.) "Mrs.

Holtzapple took the assessment report and Administrator DeWald took the x-rays both of

them just as indifferent to my situation as the staff that was aware of the situation down the

special housing." (Id. at 10.) He also alleges in his complaint that "it took the medical

department nearly four months after the incident to realize that I was suffering from a serious

head injury to the right side of my brain as a result of the blows of the assault." (Id. at 5.)

These allegations are sufficient for the matter to proceed against J. Holtzapple.

However, in turning to the allegations against Assistant Health Services Administrator

DeWald, the Court of Appeals for the Third Circuit has clearly held that a prison official

cannot be considered deliberately indifferent simply because they failed to respond to

medical complaints of a prisoner who is being treated by medical personnel. See Durmer,

991 F.2d at 69. The Durmer Court also reiterated the longstanding principle that

"*Respondeat superior* is, of course, not an acceptable basis for liability under § 1983." Id. at

n.14. Here, Plaintiff clearly alleges that he was under the care of the physicians assistant. While he argues that the treatment he received was inadequate, he clearly acknowledges he was under treatment. Accordingly, under Durmer, Plaintiff's claim against Defendant DeWald fails as a matter of law.

### 3.   Conclusion

Defendants' motion to dismiss the complaint against Defendants Womeldorf and DeWald will be granted. The motion will be denied with respect to all other Defendants.

## II.   Motion for Summary Judgment

### A.   Statement of Facts

#### 1. Administrative Remedies

An inmate may challenge any aspect of his or her confinement using the Bureau of Prison's ("BOP") administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*. Complaints must first be informally presented to staff, and staff shall attempt to resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. Id. at §542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. Id. at §§542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office.

On April 26, 2006, while incarcerated in the SHU at USP-Allenwood, Plaintiff was

assaulted by his cell mate. Thereafter, on May 5, 2006, he filed an Informal Resolution Form

setting forth the details of the assault and complaining that Bureau of Prisons ("BOP") staff

were deliberately indifferent in that they failed to timely remove him from the cell, despite

being notified that he was being assaulted by his cell mate. He also complained about the

adequacy of the medical treatment he received. (Doc. 1, at 10.)  His request for

administrative relief was denied. (Id. at 12.)  In his appeal to the Regional Office, he stated

that he "contacted medical but have not been treated yet." (Id. at 13.)  His appeal was

denied. (Id. at 14.)  In his Central Office Administrative Appeal, Plaintiff did not grieve the

issue of the medical treatment. (Doc. 1, at 15.)  Although Plaintiff pursued additional

administrative remedies, none were related to the April 26, 2006, assault or the medical

treatment received. (Doc. 33-3, Declaration of Adam J. Ackley, Attachment A.)

### 2. *Qualified Immunity*

Defendant Officer Holtzapple declares as follows:

On April 26, 2006, I was making rounds in the SHU when Williams demanded
that I remove him from his cell because he and his cell mate, where [sic] going to
be involved in a physical alteration. At this time, I was the only Officer down the
range, and since my post orders prohibit me from opening a door without the
proper amount of staff available, I informed Williams that he could not remove
Williams from the cell at this time. Immediately removing inmate Williams from
his cell without the assistance of additional staff would have been contrary to my
post orders, and would have jeopardized my safety as well as the safe and orderly
running of the institution. However, I advised Williams that I would return to the
SHU office, locate additional staff and a cell to move Williams to, and return to
move Williams to a different cell. [ ].

I proceeded to return to the SHU office, where I began reviewing the cell rotation
board in an attempt to find Williams a new cell. While reviewing the cell rotation

board, I noticed the duress light in Williams' cell was activated.  Myself, in addition to other staff members, responded to Williams' cell.  Upon arriving at Williams' cell, Williams informed staff that he and his cell mate had just fought each other.  Approximately five (5) to ten (10) minutes had passed since I had spoken with Williams.

Williams was immediately removed from his cell and escorted to the Health Services department for a medical evaluation.

(Doc. 33-2, pp. 3-4, ¶¶ 4-6.)

Defendant Kuchcinski denies the allegations that he told Plaintiff that staff was aware of his situation and that he failed to remove him from the cell.  (Id. at 12, ¶¶ 2-3.)  While he vaguely recalls Plaintiff, he does not recall the incident.  (Id. at 12, ¶ 3.)  Defendant Wetzel states that "[w]hile I vaguely recall Williams being involved in a physical altercation with his cell mate, I was not involved in any of Williams' allegations.  I was not aware that he informed staff that he was going to fights his cell mate, and I did not respond to Williams' cell once he activated the duress alarm."  (Id. at p. 14, ¶ 2.)  Neither Defendants Collier or Hughes recall Plaintiff or any of the incidents surrounding the allegations he makes.  (Doc. 33-2 at 16, ¶ 3 and 18, ¶ 3.)

Plaintiff declares that he was assaulted by his cell mate on April 26, 2006, at around 12:30 p.m.  (Doc. 35, at 1.)  He banged on the door and Defendant Officer Holtzapple appeared.  He states that he told Officer Holtzapple that he was being assaulted by his cell mate and showed him his face and blood in his mouth.  According to Plaintiff, Officer Holtzapple said he could not remove Plaintiff from the cell at that time because all staff members were in a meeting.  (Id. at 2.)  He also states that Defendant Kuchcinski "came on

the range" at least twice and that each time Plaintiff informed Kuchcinski that he needed to be removed from the cell, Kuchcinski replied "they already know up front what's going on." (Id. at 3.)  He states that "Defendants . . . Kuchcinski, G. Holtapple [sic] Collier, Huges [sic] and Wetzel were all aware of the assault taking place in that cell by the Plaintiff [sic] cellmate yet they refuse [sic] to remove the plaintiff from the cell leaving the plaintiff to ward off the assault of his cell mate for nearly an hour." (Doc. 29, at 2.)  He states that he was assaulted for nearly and hour and a half and that he was not removed from the cell until the warden and assistant warden came by his cell, recognized what was happening and ordered that he be removed. (Doc. 35, at 2.)

Upon arriving at the medical department he "was unable to fully open his mouth, had mild bruising inside his lower lip, had a small one (1) centimeter cut to his lip with mild bleeding, and no deformity or bruising to his right shoulder." (Doc. 33-2 at 20-21, ¶ 4.)  An x-ray of his jaw was ordered, which was negative. (Id.)  He was directed to ice the area for twenty minutes every hour and to alert staff if any further problems arose. (Id. at 21 ¶ 4; see also id. at 29.)

Plaintiff also submitted the declaration of James Brown ("Brown"), an inmate who was housed on the same block as Plaintiff.  Brown declares as follows:

> [o]n 4/26/06 I heard a thumping noise on the range. This was around 12:15 or 12:30. Inmate Williams was yelling for help. A [sic] officer came to his door and Williams said something about his cell mate attacking him. The officer left the range and the thumping continued. Myself and another inmate banged on our door and pushed our panic buttons for a while trying to get the officer to come back on the range and let Williams out of the cell. It wasn't until the warden come on the

unit like a[n] hour later.  The officer was order[ed] by the associate warden to remove Williams from the cell.

(Do. 28, at 2.)

## B.    Standard of Review

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004).  Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Twp., 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004).  "Such affirmative evidence--regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).  Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

## C.    Discussion

### 1.    Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court.  The act

14

specifically provides as follow:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).  Prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process.  See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  "[I]t is beyond the power. . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (citations omitted).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Nyhuis, 204 F.3d at 71.  The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.  Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 2386.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  Id. at 2387 (quoting Nussle, 534 U.S. at 525)).

As stated above, if dissatisfied with the response at the Regional Office level, an

inmate then has the responsibility to appeal the decision to the Central Office of the BOP.  Id.

at §§542.15(a) and 542.18.  No administrative appeal is considered finally exhausted until a

decision is reached on the merits by the BOP's Central Office.  It is undisputed that Plaintiff

failed to include his medical claim in his Central Office Administrative Appeal.

Consequently he failed to exhaust his administrative remedies.  Summary judgment will be

entered in favor of Defendant J. Holtzapple on the claim of inadequate medical care.

2.    *Qualified Immunity*

Defendants also argue that they are entitled to qualified immunity.  (Doc. 32, at 33.)

The following qualified immunity standard was recently succinctly set forth in a United

States Court of Appeals for the Third Circuit opinion:

> Qualified immunity, as the Supreme Court has explained, is the principle that
> "government officials performing discretionary functions generally are shielded
> from liability for civil damages insofar as their conduct does not violate clearly
> established statutory or constitutional rights of which a reasonable person would
> have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine
> whether this type of immunity applies, we engage in a multi-step inquiry.  "First,
> we must ask whether the conduct alleged by the plaintiff violated a clearly
> established principle of constitutional or statutory law.  If so, then we go on to ask
> whether the unlawfulness of the action would have been apparent to an objectively
> reasonable official." Showers v. Spangler, 182 F.3d 165, 171-172 (3d Cir. 1999)
> (internal citation omitted); see also Rouse v. Plantier, 182 F.3d 192, 196-197 (3d
> Cir. 1999) (three-step inquiry) ("(1) whether the plaintiffs alleged a violation of
> their constitutional rights; (2) whether the right alleged to have been violated was
> clearly established in the existing law at the time of the violation; and (3) whether
> a reasonable official knew or should have known that the alleged action violated
> the plaintiffs' rights").
>
> Whether this inquiry is couched in two or three stages, the first or "threshold
> question" is this:  "Taken in the light most favorable to the party asserting the

injury, do the facts alleged show the [official's] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).

Walter v. Pike County, No. 07-1668, 2008 WL 4252679 at * 7 (3d Cir. Sept. 18, 2008).

Plaintiff alleges that Defendants failed to protect him.  There is no doubt that the parties' accounts of the events of April 26, 2006, differ significantly.  Having reviewed all of the evidence in the light most favorable to the non-movant, the Court finds that there exists genuine issues of material fact.  In particular, issues of fact exist as to whether Defendants knew of and disregarded an excessive risk to the safety of Plaintiff.  See Farmer, 511 U.S. at 837.  As such, the motion for summary judgment on the issue of qualified immunity will be denied.

## III.    Conclusion

Based on the foregoing, Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the complaint against all Defendants in their official capacity, will be granted as to all Defendants.

The motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim, will be granted with respect to the failure to protect claim against Defendant Womeldorf and the inadequate medical care claim against Defendant DeWald. The motion is denied in all other respects.

The summary judgment motion pursuant to Federal Rule of Civil Procedure 56, will be granted with respect to Defendant J. Holtzapple on the inadequate medical care claim. The motion will be denied as to the failure to protect claim lodged against Defendants

17

Officer Holtzapple, Kuchcinski, Collier, Wetzel and Hughes.  The failure to protect claim will proceed to trial against Defendants Officer Holtzapple, Kuchcinski, Collier, Wetzel and Hughes and will be scheduled for trial at the convenience of the Court.

An appropriate order will follow.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court

Dated: September 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK WILLIAMS, | : | CIVIL NO. 3:-07-CV-1283 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| LT. WARMERDORF, et al., | : | |
| **Defendants** | : | |

## ORDER

AND NOW, to wit, this 24ᵗʰ day of September 2008, in accordance with the foregoing memorandum, it is hereby **ORDERED** that Defendants' motions to dismiss and for summary judgment (Doc. 27) are disposed of as follows:

1.    Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is GRANTED.

2.    Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED IN PART and DENIED IN PART as follows:

      a.    The motion is GRANTED with respect to Defendant Womeldorf on the failure to protect claim  and as to Defendant DeWald on the inadequate medical care claim.  The Clerk of Court is directed to TERMINATE these parties.

      b.    The motion is DENIED in all other respects.

3.    Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED IN PART and DENIED IN PART as follows:

      a.    The motion is GRANTED with respect to Defendant J. Holtzapple on the inadequate medical care claim.  The Clerk of Court is directed to TERMINATE this party.  Entry of judgment is DEFERRED pending final disposition of the matter.

      b.    The motion is DENIED in all other respects.  The matter will proceed to trial, at the convenience of the Court, on the failure to

protect claim against Defendants Officer Holtzapple, Kuchcinski, Hughes, Collier and Wetzel.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court